141 So. 250

**SHEPHERD et al. v. CLEMENTS.**

**6 Div. 788.**

Court of Appeals of Alabama.

Feb. 17, 1931.

Rehearing Denied May 26. 1931. Reversed After Mandate Dec. 15, 1931. Rehearing Denied Jan. 12, 1932.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellants.

R. Du Pont Thompson and Walter S. Smith, both of Birmingham, for appellee.

**BRICKEN, P. J.**

This was an action on the common counts by O. R. Clements against Shepherd Sloss Realty Company, the individuals composing that firm, and R. G. Hawkins, for work and labor done. The defendant Hawkins was eliminated by amendment because of lack of service.

The trial was before the circuit court without a jury, and, at the conclusion of the testimony, heard ore tenus, the learned trial judge rendered judgment for the plaintiff, Clements (appellee here), for $381.37. The defendants (appellants) bring the cause here for review by appeal.

■ No exception was reserved to the rendition of the judgment rendered by the Jefferson circuit court. For that reason we are precluded from reviewing the action of the court below in rendering the judgment. Hill v. Condon, 14 Ala. App. 332, 70 So. 208; Greek American Produce Co. v. Louisville & Nashville R. Co., 1 Ala. App. 272, 55 So. 455.

■ The appeal in this cause is from the judgment. No appeal is prosecuted from the action of the court in overruling the motion for a new trial. The appeal bond recites that the defendants "has (have) prayed and obtained an appeal from said judgment to the Court of Appeals of Alabama," etc. Under this appeal, the court's action on the motion for a new trial is not reviewable here. McMillon v. Skelton, 208 Ala. 693, 95 So. 148; Robinson v. Steverson, 20 Ala. App. 59, 100 So. 910.

This leaves for review five assignments of error that relate to rulings on the admission of evidence. A careful consideration of each of these questions fails to disclose any error that probably injuriously affected the substantial rights of the parties. Supreme Court rule 45.

The judgment appealed from is affirmed.

Affirmed.

### On Rehearing.

■ The appeal in this case is from the Jefferson county circuit court, and is governed by the Jefferson County Practice Act (Acts 1888–89 pp. 797, 800 § 7 et seq.).

The decisions of this court, as well as those of the Supreme Court, are to the effect that the Local Practice Act controls to the exclusion of the general statutory provisions embraced in section 9502 of the Code 1923. Ex parte State ex rel. Harle-Haas Co., 19 Ala. App. 400, 97 So. 680; Ex parte Doak, 188 Ala. 406, 66 So. 64; Ex parte Byers Machine Co., 18 Ala. App. 78, 89 So. 88; Ex parte Payne, 130 Ala. 189, 29 So. 622.

The case of Browne v. Giger, 221 Ala. 176, 128 So. 174, has been consulted. We find nothing in that case to indicate that section 9502 of the Code repeals the Local Practice Act above referred to.

The application for rehearing is overruled.

### Opinion after Remandment.

The former decision by this court in this case dealt only with the question of procedure. The merits were not discussed, as this court was of the opinion that the principal points of decision were not presented. Our views are expressed in said opinion, and need not be restated. On certiorari to the Supreme Court, the decision here reached was reversed and the cause remanded to this court for further consideration. Ex parte Shepherd & Sloss Realty Co. et al. (In re Shepherd & Sloss Realty Co. et al. v. Clements, 224 Ala. 1, 141 So. 255. Under the statute (Section 7318 of the Code 1923), the decisions of the Supreme Court shall govern the holdings and decisions of this court. We will therefore proceed to write to the merits of this case.

Action by O. R. Clements on the common counts, including a count for money due by account, against Everett Shepherd and A. Page Sloss as individuals and as partners doing business under the firm name and style of Shepherd & Sloss Realty Company; and Sloss Realty Company; and Shepherd & Sloss Realty Company, a corporation; and R. G. Hawkins. No service of the summons and complaint was had upon R. G. Hawkins, and, when the case came on trial, on motion of plaintiff, R. G. Hawkins was stricken as a party defendant. The remaining defendants entered a plea of the general issue in short by consent, insisting under such plea upon

defenses of the general issue and the statute of frauds. The case was tried by the court without a jury, and judgment rendered for the plaintiffs in the amount of $381.37.

The appellants, defendants in the court below, assign for error the action of the trial court in rendering judgment for the plaintiff and in overruling defendants' motion for a new trial. Principal insistence of the appellants is that the great weight of the evidence offered by the plaintiff shows that the agreement relied on is void under section 8034 of the 1923 Code of Alabama, which provides, among other things, that every special promise to answer for the debt, default, or miscarriage of another is void, unless the agreement or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing.

The bill of exceptions discloses that in the month of December, 1927, the appellants entered into a contract with the Birmingham Excavating Company whereby, for a stipulated compensation to be paid, the Birmingham Excavating Company agreed to excavate and haul away a specified quantity of dirt from the southeast corner lot of Highland avenue and Twentieth street in the city of Birmingham, Ala.; and to that end to do all the work required to be done, and furnish all the materials, equipment, etc. R. G. Hawkins and the Birmingham Excavating Company were one and the same person, and were so treated by the parties in the court below.

Thereafter, and in the latter part of December, 1927, R. G. Hawkins contracted with the plaintiff, O. R. Clements, to haul the excavated dirt from the premises referred to, and agreed upon the compensation to be paid by Hawkins to Clements. Being fearful that Hawkins would not pay him (Clements) for his work, Clements testified that he had certain transactions with the appellants whereby plaintiff claims appellants became obligated to pay him for his work in hauling the dirt. There is much contradiction and uncertainty in the plaintiff's own testimony.

Over the objection of the appellants that the admission of such testimony involved a violation of the opinion rule, plaintiff was allowed to testify that he did some work for R. G. Hawkins and Shepherd-Sloss Realty Company, a partnership, in the month of January, 1928, but this general statement must be weighed in the light of the subsequent and more detailed testimony of the plaintiff as to the transactions with appellants.

The plaintiff further testified that at 8:30 o'clock on the morning that he began hauling dirt he had a conversation with Everett Shepherd, one of the appellants, as follows: "Well, I told Mr. Shepherd that Hawkins wanted me to work on that job of his over there, and if he would be responsible for my money that I would work on it; otherwise, I wouldn't; and he told me 'Well, when the job is complete, I will owe Hawkins approximately $2000.00, and I won't pay him any more until the job is complete, and I will pay off the truck hire myself'; after that I did the work in the sum of $995.50."

Plaintiff, on cross-examination, testified that he started to work on the job about the last of December, 1927, pursuant to his agreement with Hawkins, and that he did not have the conversation with Shepherd until two or three days after he had started to work for Hawkins.

Plaintiff further testified that he had a second conversation with Shepherd, upon which he also seeks to predicate liability of the appellants, at which one Murdock was present; and that this second conversation with Shepherd was either on the same day on which the first conversation occurred or the day following. Murdock, a witness for the plaintiff, testified that the conversation at which he was present occurred when the job was about half through, which would have fixed the time of this conversation as about January 14, 1928. Murdock testified: "Well, the Birmingham Excavating Company had this contract and they were trying to get trucks, and Mr. Clements called us and wanted us to send some trucks over there— or Hawkins did, rather the Birmingham Excavating Company; and we told him that we wouldn't send them over there unless we were sure of our pay, and so then, Mr. Clements and myself went to see Mr. Shepherd and asked him if he would be responsible for the pay, and he said that Mr. Hawkins had approximately $2,000.00—I believe it was— coming at that time, and that he would arrange to see that we got our money." "Mr. Clements told Mr. Shepherd that he wouldn't proceed unless he would be sure of his money, unless he (Clements) was sure that his (Shepherd's) firm would see that he got the money." That thereupon Shepherd responded that he "Would see personally that we all got the money."

Testifying as to the course of the transaction between himself and Hawkins, plaintiff testified: "Me and Mr. Hawkins got together and counted these tickets and put them down for the whole job. We would get a job by the load, you see, and he would give me so much a load to haul it away from there, and then when I would get through that job we would add them up and agree on the number, you see." Upon being asked the question, "What was your agreement with Mr. Hawkins as to what part would be by the load and what part by the hour?" the plaintiff responded: "He sold most of

the dirt. He sold it in order to help him get out on the price. When we were hauling to his dump it was by the hour and if I sold it myself it was by the load."

The plaintiff further testified that, at the time he claimed to have had the agreement with Shepherd, there was not anything said about whether the work would be by the load or by the hour, and that nothing at all was said concerning the rate of plaintiff's compensation.

The plaintiff further testified that "Mr. Hawkins and I would get together and figure up the amount that we did each day, all except the first week there. I didn't work for him only by the load for the first few days. All the rest of these items (referring to an itemized statement of the account which was introduced in evidence) Mr. Hawkins and I got together and figured up the amount we did each day and then we put it down for that day. We did that for each one of these items."

The plaintiff further testified that he went to Hawkins several times all along, and asked that he pay the account. And plaintiff, when asked the question, "Well, now, do you claim that Mr. Shepherd agreed to pay you for all this?" replied, "He agreed to pay me what Hawkins owed me." At another point in his testimony, plaintiff, referring to Hawkins, said, "I know he owes me $435.35."

At the time plaintiff filed this suit, at which time, as noted above, he named R. G. Hawkins as a party defendant, plaintiff attached an itemized verified statement of the account sued on. This statement of account is made to "R. G. Hawkins, City"; it does not name the appellants as debtors.

Though the plaintiff testified that, after his conversations with Shepherd, which he, the plaintiff, first claimed to have occurred on the day on which work was begun and afterwards claimed to have occurred two or three days after the work began, he received no payments for work from Hawkins, yet the sworn statement of account which he filed in the cause shows credits of $100 on January 10, 1928, and $215.15 on January 12, 1928, which credits the plaintiff admitted were placed there because of payments by Hawkins to him.

The testimony of the appellants was clear and positive to the effect that no promise had been made either to pay him for the work or to be responsible for payment by Hawkins.

Upon a most careful and painstaking examination of the evidence and of the briefs of counsel, we are persuaded that the great weight of evidence introduced by the plaintiff himself did no more than to disclose a moral agreement by Shepherd to be responsible for payment to plaintiff in the event Hawkins defaulted. To set out all the evidence which

impels us to this conclusion would extend this opinion to too great length. We have, therefore, only undertaken to state the leading tendencies of the evidence.

True, if the work done by the plaintiff might with reasonable certainty be regarded as "truck hire," there would be a scintilla of evidence of a contract between appellant Shepherd and plaintiff, consisting of an offer by Shepherd to pay for truck hire himself, followed by an acceptance of plaintiff in performing the work. But it is too uncertain as to whether the truck hire referred to by Shepherd (assuming that part of plaintiff's testimony to be true) meant the compensation to be paid plaintiff for his work as an entirety, or referred to the cost to plaintiff of hiring trucks from others with which to do the hauling. Such trucks were hired by the plaintiff from the firm represented by the witness Murdock, with which to do the hauling. Plaintiff's claim is not predicated upon the cost of trucks hired by him with which to do the hauling, but is predicated upon the rate of pay agreed upon between himself and Hawkins.

Appellee has given copious space in brief to argument of the principle which allows a third person an action upon a contract made between others for his benefit; but this principle is in no manner applicable to the instant case.

While we are mindful of the principle that appellate courts should not disturb the findings of a trial judge, when the evidence is taken ore tenus, unless such findings are plainly or palpably contrary to the the weight of the evidence, we are convinced upon the most thorough consideration of the case that the great weight of the evidence introduced by the plaintiff himself shows only an oral agreement void for noncompliance with our statute of frauds, section 8034 of the 1923 Code of Alabama.

It follows that the trial court erred in rendering judgment for the plaintiff and in overruling the motion for a new trial. A judgment is here rendered for appellants.

Reversed and rendered.

### On Rehearing.

We have considered the earnest insistences of appellee on application for rehearing, but are still of the opinion that the decision rendered in this case by this court is correct.

In support of what has been said, in the opinion of this court, as to the facts of the case and the proposition of law involved, we quote with approval from appellants' reply brief on application for rehearing wherein it is insisted that certain other evidence, adduced upon the trial and not quoted or referred to in the opinion, is pertinent to the is-

sue in this case, and which proves conclusively that the appellee cannot recover on a contract made by a third party for his benefit:

"The witness Clements testified that Shepherd agreed that he would be responsible for his money; the witness Murdock testified that Shepherd agreed to be responsible for Clements' pay, and that Hawkins had approximately $2000.00 coming to him and that Shepherd would arrange to see that he got his money. The witness Clements further testified on cross-examination that Shepherd agreed to pay him what Hawkins owed him. This is all of the evidence introduced on behalf of the appellee to establish the purported agreement of the parties. From this evidence, it is clearly manifested that the evidence of the appellee merely establishes a collateral undertaking on the part of the appellants. This, however, was disputed by the defendants, but considering the evidence most advantageous to the appellee, it is uncontradicted that it was a collateral undertaking, and such agreement came within the terms of the statute of frauds and unless the statute was conformed to, the contract was void.

"The evidence of the appellee further disclosed that the account was changed on his books to R. G. Hawkins; furthermore, that the sworn itemized statement of account filed in the cause showed an account against R. G. Hawkins and R. G. Hawkins alone. There is no testimony in this case wherein the appellee attempts to explain or justify why the statement filed in the cause was made in the name of R. G. Hawkins alone, and why demands were made upon Hawkins for the payment of the account from time to time, and furthermore, why payments were received from him.

"In Boykin & McRae v. Dohlonde & Co., 37 Ala. 577, the following rule is laid down by the Court:

"'The entry in the books of the seller is often of great importance, in determining to whom credit was given. Being made by the seller, it is, of course, of much greater weight when against him, than when it sustains his claim. If, on production of plaintiff's books, it appears that the defendant was not originally debited there, but that the goods were charged against the person receiving them, that fact, if unexplained by other circumstances, would be very strong, if not conclusive evidence, that credit was given to the person receiving the goods.'

"This rule is analogous and has application to an itemized statement taken from the book of accounts; and the witness herein testified that the books were lost and before filing the suit he made an itemized statement of the account. These facts amount to an admission on the part of the plaintiff that no credit

whatsoever was extended to the defendant and that he was looking to the defendant only in the event that he was unable to collect from Hawkins.

"In Cameron v. Haas Bros. Packing Co., 3 Ala. App. 524, 57 So. 388, the Court used the following language:

"'It is material to know to whom the goods were charged on the plaintiff's books and to whom the bill was first presented for payment, whether to the defendant or to the party to whom they were actually delivered.'

"In the instant case, it is shown that the first payments received on the account were received from R. G. Hawkins and the admitted payment of Two Hundred and Fifty Dollars ($250.00) was made subsequent to the two payments made by Hawkins, and, in addition, was made on an order from Hawkins directing that the defendant pay the plaintiff that sum. The defendants contend that two other payments were made and that these payments were made only on orders from Hawkins.

"In Day v. Adcock, 11 Ala. App. 475, 66 So. 911, the Court used the following language:

"'As the question to whom credit was given must depend upon the intention of the parties, the fact that the goods were charged to the person receiving them is not conclusive, but may be explained and made consistent with the assumption of defendant's primary liability.'

"In the instant case, there is no explanation found explaining the plaintiff's method of handling the account of R. G. Hawkins.

"The leading case in establishing the rule of determining whether a contract or agreement is within the statute of frauds is the case of Boykin & McRae v. Dohlonde & Co., in 37 Ala. 577, in which case the following language is found:

"'When an action is brought against one charging him with the value of goods delivered to another, and on his promise to pay; and it is set up in defense that the promise was to pay the debt of another, and was not in writing, the decisive question is to whom was the credit given. If the credit was given solely to the defendant, that is, if the goods were really sold to him, though delivered to another—the statute is then out of the case. But, if the whole credit was not given to the defendant—that is to say, if any credit at all was given to the party receiving the goods—the promise to the defendant is collateral and within the statute.'

"The undisputed evidence in this case discloses that Hawkins was never released, and in accordance with the authorities cited above the purported agreement made by Clements and Hawkins clearly comes within the pro-

visions of the statute of frauds and is therefore void.

■ "The burden of proof was cast upon the plaintiff in this cause to establish, after a plea of the statute of frauds was filed in the cause, that his agreement did not come within the statute. This proposition has been held by the Supreme Court in the following authorities: Jonas v. Field, 83 Ala. 445, 3 So. 893; Jones v. Hagler, 95 Ala. 529, 10 So. 345; Lord v. Calhoun, 162 Ala. 444, 50 So. 402; Forbes et al. v. Plummer, 198 Ala. 162, 73 So. 451.

"The rule was clearly declared in the case of Forbes et al. v. Plummer, supra, in the following language:

" 'As to the statute of frauds, the exception to the rule is that when issue is taken on such plea, the burden is on the plaintiff to show a valid contract.—Jonas v. Field, 83 Ala. 445, 3 So. 893. In the latter case it is said: 'On the plea of the statute of frauds, it is incumbent on the plaintiff to establish, either a contract in writing, or a contract not required by the statute to be in writing. The complainant sets out a contract valid in form, and on the pleadings he is required to prove a valid contract. When the statute of limitations is pleaded, the burden rests on the plaintiff to prove a cause of action within the period of the bar. The same rule applies when the statute of frauds is pleaded. As to pleas of the statute of limitations and the statute of frauds, the plaintiff is required to show facts which avoid the effect of the pleas; as, when he relies on a parol contract, the burden is on him to establish a contract not required by the statute to be in writing. Marston v. Swett, 66 N. Y. 206 (23 Am. Rep. 43); Taylor v. Spears, 1 Eng. 381; Wood's Prac. Ev. 650.'

" 'The above rule has been often followed in later cases. See Jones v. Hagler, 95 Ala. 529, 10 So. 345; McKinnon v. Mixon, 128 Ala. 612, 616, 29 So. 690; Lord v. Calhoun, 162 Ala. 446, 50 So. 402.'

"This being the law, the plaintiff has not met the burden of proof required of him in this cause, but that the undisputed evidence shows that the alleged agreement which he had was clearly within the statute of fraud. In other words, if there was any agreement, as alleged by the appellee, it was merely an agreement to answer for the debt of one Hawkins.

"The overwhelming weight of the evidence in this case was contrary to the verdict rendered by the trial judge; the undisputed evidence in the case disclosed that the agreement on which the appellee sought recovery was void as contrary to the statute of frauds."

The application for rehearing is overruled.